KILPATRICK TOWNSEND & STOCKTON LLP
Brent W. Brougher (CA Bar No. 167791)
bbrougher@kilpatricktownsend.com
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309
Tel:   (404) 815-6500
Fax:   (404) 815-6555

Heather W. Habes (CA Bar No. 281452)
hhabes@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA 90212
Tel:   (310) 248-3830
Fax:   (310) 860-0363

Attorneys for Plaintiff
OFFICE DEPOT, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| OFFICE DEPOT, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AIG SPECIALTY INSURANCE COMPANY formerly known as AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>　　　　Defendant. | **CASE NO. 2:15-cv-2416**<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL**<br><br>[filed concurrently with Civil Cover Sheet, Summons, Notice of Related Cases, and Corporate Disclosure Statement and Notice of Interested Parties] |

Office Depot, Inc. ("Office Depot") files this Complaint against AIG

Specialty Insurance Company, formerly known as American International Specialty

- 1 -

Lines Insurance Company ("AISLIC"), alleging as follows:

1. This lawsuit arises out of AISLIC's failure to honor its contractual obligations to defend and indemnify Office Depot under a series of "AIG netAdvantage" insurance policies, in connection with litigation filed in the Superior Court for the County of Los Angeles, later removed to (and then remanded from) the United States District Court for the Central District of California, titled *State of California et al., ex rel. David Sherwin v. Office Depot, Inc.* ("*Sherwin*" or "the *Sherwin* Lawsuit").  Office Depot brings claims for breach of contract pertaining to AISLIC's duty to defend and duty to indemnify.  Office Depot also seeks damages for AISLIC's tortious breach of the implied covenant of good faith and fair dealing, and a declaration regarding Office Depot and AISLIC's rights and obligations under the policies.

### The Parties, Jurisdiction and Venue

2. Plaintiff Office Depot is a Delaware corporation with its principal place of business in Boca Raton, Florida.  Office Depot is a leading global provider of office products, services and solutions.

3. Defendant AIG Specialty Insurance Company, formerly known as AISLIC is an Illinois corporation with its principal place of business in New York, New York.  As described below, AISLIC issued numerous insurance policies to Office Depot.  AISLIC is a member of the AIG family of insurers.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Office Depot and AISLIC, which are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. AISLIC is subject to personal jurisdiction in California because it regularly transacts business in California and is an admitted insurer in California.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## The *Sherwin* Lawsuit

7.     The *Sherwin* Lawsuit was originally filed under seal in March 2009 under the California False Claims Act ("CFCA") by a *qui tam* "Relator" named David Sherwin, a former employee of Office Depot.  *Sherwin* alleged that Office Depot, by various methods including the use of brochures, catalogues, bid sheets, internet sites and other materials, overcharged California government entities for office supplies, resulting in large damages to those entities.

8.     Under the *qui tam* provisions of the CFCA, *Sherwin* was filed on behalf of more than 1,000 California state and local government entities.[1]  It was a complex suit, in which the Relator claimed that Office Depot violated the CFCA by overcharging the entities for office supplies under at least five independent factual theories, all of which involve covered "wrongful acts" under the AISLIC policies.  The suit was originally filed in the Superior Court of the State of California for the County of Los Angeles, Case No BC410135.  Attached hereto as Exhibit A is a copy of the "Corrected First Amended Complaint" in *Sherwin*.  Over the course of the litigation, the plaintiffs added detail to their theories, including allegations that Office Depot misled the government entities into joining and remaining on the purchasing program by use of sales materials.

9.     In October 2012, *Sherwin* was "unsealed" under the provisions of the CFCA, and served on Office Depot.  Thereafter, Office Depot removed the case to the United States District Court for the Central District of California, Case No. Case No.: 2:12-cv-09952-FMO-CW.  Nineteen of the California political subdivisions on whose behalf the Relator originally sued (hereinafter the "Intervenors") intervened

---

[1]  Under the CFCA, any person with purported knowledge that a CFCA violation has allegedly occurred may sue in the name of the agency.  If the action is successful and money is recovered from the defendant, the Relator is entitled to a share of that recovery.  The allegedly injured agency may choose to intervene and take over primary responsibility for the case, or it may elect to allow the Relator to litigate on its behalf.

1   in the lawsuit to assert their CFCA claims, as well as common-law fraud and breach

2   of contract claims, against Office Depot.  Attached hereto as Exhibit B is a copy of

3   the complaint-in-intervention filed by the City of Los Angeles in *Sherwin*.  The

4   other intervention complaints are similar.  The rest of the California entities –

5   numbering more than 1,200 – did not intervene and relied on Sherwin to prosecute

6   their claims.

7           10.     During the *Sherwin* Lawsuit, the parties conducted extensive fact

8   discovery, completing large document productions, taking over 40 depositions, and

9   litigating various discovery disputes.  All 19 Intervenors produced documents and

10  witnesses for deposition.  While in federal court, the parties briefed several

11  dispositive motions, including motions to dismiss for lack of subject matter

12  jurisdiction and for failure to state a claim under the CFCA.  Before the merits of

13  those challenges were decided, the District Court remanded the case to Los Angeles

14  County Superior Court in January 2014.

15          11.     A settlement in principle of the *Sherwin* Lawsuit was negotiated over a

16  period of several months, with the help of a mediator.  The settlement consisted of a

17  payment to the plaintiffs totaling $68.5 million, plus $9 million in plaintiff

18  attorneys' fees.  In accordance with the terms of the CFCA, the settlement was

19  approved by the Superior Court.  During the *Sherwin* Lawsuit, Office Depot

20  incurred many millions of dollars in defense costs, including expert costs.

21                          **The AISLIC Insurance Policies**

22          12.     AISLIC issued to Office Depot four consecutive, one-year "AIG

23  netAdvantage" insurance policies, beginning with the policy period March 8, 2005.

24  Office Depot paid over $1.3 million in premiums for these policies.

25          13.     AIG netAdvantage Policy No. 490-69-43 covered the period March 8,

26  2005 through March 8, 2006, and AIG netAdvantage Policy No. 626-17-48 covered

27  the period March 8, 2006 through March 8, 2007.  Importantly, beginning in March

28  2007, certain of the insurance policy forms within the AIG netAdvantage policies

expanded to cover additional risks relevant to the *Sherwin* Lawsuit.  Thus, AIG netAdvantage Policy No. 966-95-20 covered the period March 8, 2007 through March 8, 2008 (the "2007-08 AISLIC Policy"), and AIG netAdvantage Policy No. 345-53-20 covered the period March 8, 2008 through March 8, 2009 (the "2008-09 AISLIC Policy").  Collectively these latter two policies will be referred to herein as the "AISLIC Policies."  As an example, attached hereto as Exhibit C is a copy of the 2007-08 AISLIC Policy.

14.    In contrast to the prior AIG netAdvantage policies sold to Office Depot, the 2007-08 and 2008-09 AISLIC Policies each contain a series of "optional" insurance coverage "modules" that may be purchased by an insured, covering different risks under the umbrella of the "AIG netAdvantage" policy.  Thus, for example, beginning with the 2007-08 AISLIC Policy, Office Depot purchased a module titled "Security & Privacy Liability Module" which, generally speaking, covers Office Depot for claims related to the failure of security of its computer systems, and unauthorized disclosure of private information.  In addition to the individual "modules," each of the AISLIC Policies includes Declarations Pages identifying the modules that have been purchased, the retention and limits, and other information.  Each AISLIC Policy also includes a nearly identical "BASE" section, which sets forth the "common terms, conditions and limitations" applicable to the coverage modules.

15.    The particular coverage module in the AISLIC Policies at issue in this lawsuit is titled "Multimedia Module."  The Multimedia Module is written on an "occurrence" basis, meaning that coverage is triggered depending on when the underlying "wrongful act" in question occurred, not when the underlying claim is filed.

1   16.   Each Multimedia Module in the AISLIC Policies has a limit of $15

2   million in insurance coverage, excess of a "Retention" (aka deductible) in each

3   Multimedia Module of $250,000.  *See, e.g.*, Ex. C, page 497 (Declarations).

4   17.   As noted above, significantly for purposes of this lawsuit, the language

5   in the Multimedia Modules in the AISLIC Policies expanded Office Depot's prior

6   media coverage.  With respect to the coverage grant, the Multimedia Module

7   contained in the AISLIC Policies provides that AISLIC:

8       shall pay on **your** [Office Depot's] behalf those amounts, in excess of
        the applicable Retention, **you** [Office Depot] . . . are legally obligated to
9       pay, including liability assumed under contract, as **damages** resulting
        from any **claim** made against **you** . . . for **your wrongful acts**; provided
10      that such **wrongful act(s)** first occur during the policy period, regardless
        of when such claim is made or a suit is filed.
11

12   *See, e.g.*, Ex. C, page 516 (Multimedia Module).

13   18.   The term "Wrongful Act" is defined in the Multimedia Modules in the

14   AISLIC Policies as follows:

15      **"Wrongful act"** means, solely in the broadcast, creation, distribution,
        exhibition, performance, preparation, printing, production, publication,
16      release, display, research or serialization of **material** by **you** [Office
        Depot], any actual or alleged act, error, omission, breach of duty,
17      misstatement or misleading statement, first occurring during the **policy
        period**, which results in:  …
18
            (2)   **loss** because a third party, which has no ownership relationship
19          with **you** [Office Depot], acts upon or makes a decision or decisions
            based on the content of the **material** disseminated by **you** with **your**
20          permission.

21   *See, e.g.*, Ex. C, page 517-18 (Multimedia Module).

22   19.   The Multimedia Modules in the AISLIC Policies also define

23   "material."  In relevant part,

24      **"Material"** means content:

25          (2)   in publications, including, but not limited to, newspaper,
            newsletter, magazine, book and other literary form, monograph,
26          brochure, directory, screen play, film script, playwright and video
            publications;
27
            (3   in **advertising**; or
28

1          (4)     displayed on an **Internet** site.

2  *See, e.g.*, Ex. C, page 517 (Multimedia Module).

3      20.    The term **"content"** is defined in the Multimedia Modules in the

4  Policies as "written, printed, video, electronic, digital, or digitized images, sounds,

5  text, music, descriptions and information." *See, e.g.*, Ex. C, page 517 (Multimedia

6  Module).

7      21.    **"Advertising"** is defined in the BASE sections of the AISLIC Policies

8  as: "the material in any publicity or promotion including branding, co-branding,

9  sponsorship and/or endorsements." *See, e.g.*, Ex. C, page 500 (BASE Section of

10  Policy).

11      22.    Thus, as defined in the Multimedia Modules in the AISLIC Policies,

12  "material" means "written … descriptions and information" in:

13          (1)    "publications, including, but not limited to newspaper,

14                  newsletter, magazine, book and other literary form, monograph,

15                  brochure, directory"…;

16          (2)    "in any publicity or promotion"; or

17          (3)    "displayed on an internet site."

18      23.    By its express terms, the Multimedia Modules in the 2007-08 and

19  2008-09 AISLIC Policies imposed on AISLIC a duty to defend Office Depot, by

20  reference to the "Coverage B" provisions of the BASE section of the Policies, which

21  states:

22          (1)    **Our** Duty to Defend **Insureds**:  **We** [AISLIC] have the right and
                    duty to defend a **suit** brought against any insured for covered

23                      wrongful acts, even if the **suit** is groundless or fraudulent.

24  *See, e.g.*, Ex. C, page 499 (BASE Section of Policy); *see also* Ex. C, page 516, ¶ 2

25  (Multimedia Module).

26      **Office Depot's Claim for Coverage of *Sherwin* Under the AISLIC Policies**

27      24.    Office Depot provided timely notice of the *Sherwin* Lawsuit to AISLIC

28  under the AISLIC Policies.  In response, AISLIC repeatedly denied coverage.

25.     Notwithstanding AISLIC's denials, Office Depot repeatedly urged AISLIC to change its position, explaining in detail the bases for coverage under the AISLIC Policies.  Moreover, Office Depot explained in detail why coverage was also triggered based on positions taken and arguments made by the Plaintiffs during the *Sherwin* Lawsuit that do not appear on the face of the complaints.

26.     For example, attached hereto as Exhibit D is a letter dated June 24, 2014 from Office Depot to AISLIC explaining why coverage is present for the *Sherwin* Lawsuit under the 2007-08 and 2008-09 AISLIC Policies and encouraging AISLIC to participate in settlement negotiations.  Moreover, attached hereto as Exhibit E is a letter from Office Depot to AISLIC dated August 6, 2014, requesting further that AISLIC participate in settlement discussions related to *Sherwin*.  In response, AISLIC continued to deny coverage and refused to participate in settlement discussions, by letter dated August 11, 2014, attached hereto as Exhibit F.

27.     After AISLIC repeatedly denied its contractual obligation to provide insurance coverage to Office Depot for *Sherwin*, Office Depot invoked the Alternative Dispute Resolution provisions in the AISLIC Policies, which required mediation.  The parties mediated the dispute on December 3, 2014.  The mediation concluded without any settlement.

28.     The *Sherwin* Lawsuit alleged, among other things, one or more "wrongful acts" as those terms are defined by the AISLIC Policies.  Additionally, none of the exclusions, conditions or limitations contained in the AISLIC Policies operate to preclude coverage.  At the very least, *Sherwin* contained claims and allegations that gave rise to *the potential for coverage*, thus triggering AISLIC's duty to defend Office Depot in the *Sherwin* Lawsuit, under well accepted insurance principles.

29.     By refusing to honor its contractual obligations to defend and indemnify Office Depot in connection with the *Sherwin* Lawsuit, AISLIC breached one or more of the AISLIC Policies.

Complaint for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing and Declaratory Relief
US2008 6562904 7

1
2
3
4

**COUNT** I

**(Breach of Contract -- Duty to Defend)**

5       30.   Office Depot incorporates herein by reference paragraphs 1 through 29
6   of this Complaint as fully set forth herein.

7       31.   AISLIC had a duty to defend Office Depot under the AISLIC Policies
8   because the *Sherwin* Lawsuit alleged "Wrongful Acts," or raised at least the
9   potential for coverage.

10       32.   Office Depot complied with all applicable conditions precedent
11   contained in the AISLIC Policies related to AISLIC's duty to defend.  None of the
12   exclusions, conditions or limitations contained in the AISLIC Policies operate to
13   preclude AISLIC's duty to defend.

14       33.   By failing to defend Office Depot in the *Sherwin* Lawsuit, AISLIC
15   materially breached its obligation under one or more of the AISLIC Policies.

16       34.   As a direct and proximate result of AISLIC's breach, AISLIC has
17   deprived Office Depot of the benefit of the insurance for which Office Depot has
18   paid substantial premiums to AISLIC, and has caused Office Depot to incur
19   significant legal defense fees and expenses.

20       35.   Office Depot has been damaged in an amount to be proven at trial,
21   which consists of unreimbursed defense costs associated with the *Sherwin* Lawsuit,
22   plus interest and other appropriate damages.  This amount is many millions of
23   dollars.

24

**COUNT II**

**(Breach of Contract – Duty to Indemnify)**

25

26       36.   Office Depot incorporates herein by reference paragraphs 1 through 35
27   of this Complaint as fully set forth herein.

28       37.   AISLIC had and has a duty to indemnify Office Depot under one or

- 9 -

1  more of the AISLIC Policies, because the *Sherwin* Lawsuit alleged covered

2  "Wrongful Acts."

3      38.    Office Depot has complied with all applicable conditions precedent

4  contained in the AISLIC Policies.  Additionally, none of the exclusions, conditions

5  or limitations in the AISLIC Policies operate to preclude AISLIC's duty to

6  indemnity.

7      39.    By refusing to honor its obligation to indemnify Office Depot in

8  connection with the *Sherwin* Lawsuit, AISLIC materially breached its obligation

9  under one or more of the AISLIC Policies.

10     40.    As a direct and proximate result of AISLIC's breach, AISLIC has

11 deprived Office Depot of the benefit of the insurance policies for which Office

12 Depot has paid substantial premiums, and has caused Office Depot to incur

13 significant legal fees and expenses.

14     41.    Office Depot has been damaged in an amount to be proven at trial, plus

15 interest and appropriate damages.  As set forth above, the amount of the Sherwin

16 settlement exceeds the total amount of $30 million in limits contained in the

17 AISLIC Policies.

18                          **COUNT III**

19     **(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)**

20     42.    Office Depot incorporates herein by reference paragraphs 1 through 41

21 of this Complaint as fully set forth herein.

22     43.    AISLIC, at all material times, had a duty to act fairly and in good faith

23 to Office Depot in carrying out its responsibilities under the AISLIC Policies.

24     44.    Implicit in AISLIC's obligation to act fairly and in good faith to Office

25 Depot was its duty to investigate claims against Office Depot promptly, to make

26 reasonable coverage decisions and not to do anything to deprive Office Depot of the

27 benefit of the AISLIC Policies.

28     45.    AISLIC wrongfully breached the covenant of good faith and fair

dealing implied in the AISLIC Policies, and its related statutory obligations as an insurer, to act fairly and in good faith toward Office Depot, including, but not limited to, the following:

  a.  By failing either to investigate properly the facts related to the claims asserted against Office Depot in the *Sherwin* Lawsuit, or to evaluate those facts properly;

  b.  By failing to fully inquire into possible bases that might support coverage for the *Sherwin* Lawsuit;

  c.  By basing its coverage decision on AISLIC's desire to reduce or avoid its obligations to Office Depot;

  d.  By ignoring facts and evidence available, as well as relevant case law that supported Office Depot's insurance claims under the AISLIC Policies;

  e.  By unreasonably interpreting the AISLIC Policies' language in its favor, contrary to its terms;

  f.  By failing to give Office Depot's interests equal consideration with its own;

  g.  By failing to pay defense costs and to indemnify Office Depot in connection with the *Sherwin* Lawsuit, for which Office Depot reasonably expected indemnification; and

  h.  By forcing Office Depot to institute litigation to recover amounts due under the AISLIC Policies.

46.  In committing such acts, AISLIC acted unreasonably and in bad faith, and harm to Office Depot was reasonably foreseeable.

47.  As a direct and proximate result of AISLIC's tortious breach of the covenant of good faith and fair dealing implied in the AISLIC Policies, Office Depot has suffered damages.

48.  Office Depot is entitled to recover from AISLIC extra-contractual

1  damages, including without limitation incidental and consequential damages

2  flowing from AISLIC's bad faith denials, attorneys' fees incurred by Office Depot

3  pursuing coverage in light of AISLIC's wrongful denial of coverage, pre-judgment

4  interest, punitive damages, and such other relief as the Court deems appropriate.

5  **COUNT IV**

6  **(Declaratory Judgment on AISLIC's Duty to Defend and Indemnify)**

7  49.    Office Depot incorporates herein by reference paragraphs 1 through 48

8  of this Complaint as fully set forth herein.

9  50.    AISLIC owed a duty to defend and indemnify Office Depot in the

10  *Sherwin* Lawsuit.

11  51.    AISLIC's failure to pay any of Office Depot's defense costs and

12  settlement in connection with the *Sherwin* Lawsuit constitutes a material breach of

13  its duties and obligations under the AISLIC Policies.

14  52.    In light of the above, there exists an "actual controversy" between the

15  parties appropriate for the entry of a declaratory judgment pursuant to 28 U.S.C.

16  2201, in Office Depot's favor.

17  53.    Office Depot is entitled to a declaration that AISLIC had a duty to

18  defend and indemnify Office Depot in the *Sherwin* Lawsuit; that AISLIC breached

19  one or more of the AISLIC Policies; and that AISLIC owes Office Depot amounts to

20  be determined by the Court under one or more of the AISLIC Policies.

21  **PRAYER FOR RELIEF**

22  WHEREFORE, Office Depot respectfully seeks the following relief:

23  A.    That the Court enter judgment in favor of Office Depot on all causes of

24  action;

25  B.    On all causes of action, an award of damages in Office Depot's favor in

26  an amount to be determined at trial;

27  C.    On Office Depot's Third Cause of Action, extra-contractual damages,

28  including without limitation compensatory damages flowing from

1    AISLIC's bad faith denials, attorneys' fees incurred by Office Depot
2    pursuing coverage in light of AISLIC's wrongful denial of coverage,
3    pre-judgment interest, punitive damages, and such other relief as the
4    Court deems appropriate;

5    D.    On Office Depot's Fourth Cause of Action, a declaration that (a)
6          AISLIC materially breached one or more of the AISLIC Policies; and
7          (b) AISLIC has an obligation to pay defense costs and indemnity
8          payments for the *Sherwin* Lawsuit in amounts determined by this Court
9          under one or more of the AISLIC Policies;

10   E.    On all claims for relief, an award of Office Depot's reasonable
11         attorneys' fees, pre-judgment and post-judgment interest, costs and the
12         expenses of this action;

13   F.    On all claims for relief, for such other, further and different relief as
14         this Court deems just and proper; and

15   G.    That this case be tried by a jury.

16

17   DATED:  April 2, 2015            Respectfully submitted,
18                                    KILPATRICK TOWNSEND & STOCKTON LLP
19

20                                    By:   /s/Brent W. Brougher
21                                          Brent W. Brougher
22                                    Attorney for Plaintiff
                                      OFFICE DEPOT, INC.
23

24

25

26

27

28

Complaint for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing and Declaratory Relief
US2008 6562904 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REQUEST FOR TRIAL BY JURY**

Office Depot hereby request that this case be tried to a jury.

DATED:  April 2, 2015                    Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:    /s/Brent W. Brougher
       Brent W. Brougher

Attorney for Plaintiff
OFFICE DEPOT, INC.

- 14 -