KILPATRICK TOWNSEND & STOCKTON LLP
Brent W. Brougher (CA Bar No. 167791)
bbrougher@kilpatricktownsend.com
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528
Telephone:  (404) 815-6500
Facsimile:   (404) 815-6555

Heather W. Habes (CA Bar No. 281452)
hhabes@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA  90212
Telephone:  (310) 248-3830
Facsimile:   (310) 860-0363

Attorneys for Plaintiff
OFFICE DEPOT, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| OFFICE DEPOT, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>AIG SPECIALTY INSURANCE COMPANY formerly known as AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>       Defendant. | **CASE NO. 2:15-cv-2416-SVW (JPRx)**<br>Assigned to Hon. Stephen V. Wilson<br><br>**PLAINTIFF OFFICE DEPOT'S OPPOSITION TO DEFENDANT AIG SPECIALTY INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:      January 9, 2017<br>Time:     1:30 p.m.<br>Courtroom:  10A |

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

4

I. INTRODUCTION...............................................................................1

II. FACTUAL BACKGROUND. ...........................................................2

III. ARGUMENT. ..................................................................................2

    A.    **AIG Cannot Satisfy Its Heavy Burdens To Prevail On This Motion**...................................................................... 2

    B.    **The Court's Earlier Ruling In the Case Did Not Foreclose A Duty to Defend Office Depot in *Sherwin*.** ................. 4

        1.    ***Sherwin* Sought To Impose Liability For Less Than Willful Conduct.**........................................ 5

        2.    **Even Assuming Section 533 Applies, Office Depot had a "Reasonable Expectation" of Coverage.**....................................................................7

    C.    **The Coverage Grant in the AIG Policies Triggers A Defense, Under Either Both the "Potential for Coverage" and "Reasonable Expectation" Doctrines.** ............. 10

    D.    **The Exclusions Cited by AIG Do Not Foreclose Coverage.**.......................................................................... 14

        1.    **Exclusion 7(e) For Breach of Contract**........................... 16

        2.    **Endorsement 6 Regarding Fraud/Intentional Conduct**........................................ 18

        3.    **Exclusion 7(g), the Prior Acts Exclusion** ......................... 21

        4.    **Exclusion 4(i), the Public Agency Exclusion** ................... 23

        5.    **Exclusion 4(p)**............................................................... 24

        6.    **Exclusion 7(a).**.............................................................. 25

IV. CONCLUSION................................................................................25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Surety Co. v. Superior Court*,
  19 Cal. App. 4th 320 (1993) ............................................................................ 4, 7

*AIG Prop. Cas. Co. v. Cosby*,
  No. CV 15-04842-BRO, 2015 WL 9700994 (C.D. Cal. Nov. 13,
  2015) ......................................................................................................................... 17

*AIU v. Superior Court*,
  51 Cal. 3d 807 (1990) .......................................................................................... 11

*Amer. Guar. & Liab. Ins. Co. v. Abram Law Group LLC*,
  555 Fed. Appx. 919 (11th Cir. 2014) ............................................................ 22

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*,
  100 Cal. App. 4th 1017 (2002) .......................................................................... 3

*B&E Convalescent Ctr. v. State Comp. Ins. Fund*,
  8 Cal. App. 4th 78 (1992) ..................................................................... 9, 10, 20

*Berns v. Sentry Select Ins. Co.*,
  No. 14-55996, 2016 WL 4011198 (9th Cir. July 27, 2016) ................... 15

*Bond Safeguard Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh,
  Pa.*,
  628 Fed. Appx. 648 (11th Cir. 2015) (unpublished) ............................... 18

*California Dairies Inc. v. RSUI Indem. Co.*,
  No. 1:08-CV-00790 OOW GSA, 2009 WL 2475004 (E.D. Cal. Aug.
  11, 2009) .................................................................................................................. 16

*Church Mutual Ins. Co. v. U.S. Liability Ins. Co.*,
  347 F. Supp. 2d 880 (S.D. Cal. 2004) ...................................................... 17, 24

*Clemmer v. Hartford Ins. Co.*,
  22 Cal. 3d 865 (1978) .......................................................................................... 15

*CNA Cas. of California v. Seaboard Surety Co.*,
  176 Cal. App. 3d 598 (Cal. Ct. App. 1986) ............................................... 7, 21

*Delgado v. Heritage Life Ins. Co.*,
    157 Cal. App. 3d 262 (1984) ..................................................................... 15

*Downey Venture v. LMI Ins. Co.*,
    66 Cal. App. 4th 478 (1998) ................................................................. 6, 8

*E.M.M.I. Inc. v. Zurich American Ins. Co.*,
    32 Cal. 4th 465, 470 (2004) ....................................................... 10, 12, 25

*El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.*,
    92 Cal. App. 4th 205 (2001) ................................................................... 14

*Fair Housing Council of Riverside County, Inc. v. Riverside Two*,
    249 F.3d 1132 (9th Cir. 2001) ................................................................... 2

*Federal Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh*,
    1991 WL 36330 (9th Cir. March 15, 1991) (unpub)............................... 22

*Garvey v. State Farm Fire & Cas. Co.*,
    48 Cal. 3d 395 (1985) .............................................................................. 15

*Gray v. Zurich Ins. Co.*,
    65 Cal. 2d 263 (1966) .......................................................................*passim*

*H5 Services, Inc. v. Nationwide Mut. Ins. Co.*,
    109 F.3d 642 (9th Cir. 1997) ................................................................... 16

*Hardin v. Greenwich Ins. Co.*,
    2012 WL 3217704 (C.D. Cal. Aug. 3, 2012) ........................................... 3

*Health Net, Inc. v. RLI Ins. Co.*,
    206 Cal. App. 4th 232 (Cal. Ct. App. 2012)........................................... 19

*Horace Mann Ins. Co. v. Barbara B.*,
    4 Cal. 4th 1076 (1993).............................................................................. 3

*Hudson Ins. Co. v. Colony Ins. Co.*,
    624 F.3d 1264 (9th Cir. 2010) ................................................................... 7

*Integra Telecom, Inc. v. Twin City Fire Insurance Co.*,
    2010 WL 1753210 (D. Or. 2010) ..................................................... 12, 23

*K.M. Strategic Management, LLC v. American Casualty Company of
    Reading PA*,
    156 F. Supp. 3d 1154 (C.D. Cal. 2015)................................................... 3

*Kazi v. State Farm Fire & Cas. Co.*,
    24 Cal. 4th 871 (2001) .................................................................................. 11

*MacKinnon v. Truck Ins. Exch.*,
    31 Cal. 4th 635 (2003) ........................................................................*passim*

*Marie Y. v. General Star Indem. Co.*,
    110 Cal. App. 4th 928 (2003) ..................................................................... 8, 9

*Maxtech Holding, Inc. v. Federal Ins. Co.*,
    202 F.3d 278 (9th Cir. 1999) .......................................................................... 22

*Medill v. Westport Ins. Corp.*
    (2006) 143 Cal. App. 4th 819 ........................................................................ 17

*Mez Indus. Inc. v. Pacific Nat. Ins. Co.*,
    76 Cal. App. 4th 856 (1996) ................................................................. 4, 7, 10

*Montrose Chemical Corp. v. Superior Court*,
    6 Cal. 4th 287 (1993) ................................................................................ 3, 21

*Nat'l Bank of California v. Progressive Cas. Ins. Co.*,
    938 F. Supp. 2d 919 (C.D. Cal. 2013) ............................................................ 20

*National* Union *Fire Ins. Co. of Pittsburgh, Pennsylvania v. Amer. Int'l Specialty Lines Ins. Co.*,
    233 Fed. Appx. 614, 616 (9th Cir. 2007) .................................................. 14, 15

*Ohio Cas. Ins. Co. v. Hubbard*,
    162 Cal. App. 3d 939 (1984) ............................................................................ 9

*Parman v. American Nat. Fire Ins. Co.*,
    2002 WL 32689 (Cal. Ct. App., Jan. 11, 2002) ........................................ 12, 23

*Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*,
    307 F.3d 944 (9th Cir. 2002) .......................................................................... 12

*Raychem Corp. v. Federal Ins. Co.*,
    853 F. Supp. 1170 (N.D. Cal. 1994) .............................................................. 5, 6

*Republic Indemnity Co. v. Superior Court*,
    224 Cal. App. 3d 492 (1990) ............................................................................ 9

*Rizzo v. Ins. Co. of State of Pennsylvania*,
    969 F. Supp. 2d 1180 (C.D. Cal. 2013) .......................................................... 20

*Safeco Ins. Co. of Am. v. Robert S.*,
    26 Cal. 4th 758 (2001) ........................................................................ 11, 15

*Southgate Recreation & Park Dist. v. California Assn. for Park &*
    *Recreation Ins.*,
    106 Cal. App. 4th 293 (2003) ............................................................... 17

*State Farm Mut. Auto. Ins. Co. v. Jacober*,
    10 Cal. 3d 193 (1973) ........................................................................... 10

*Ticketmaster, LLC v. Illinois Union Ins. Co.*,
    524 Fed. Appx. 329 (9th Cir. 2013) ...................................................... 3

*Waller v. Truck Ins. Exch.*,
    11 Cal. 4th 1 (1995) .......................................................................... 14, 16

**Statutes**

Cal. Gov't Code § 12650(b)(3) ..................................................................... 6

Cal. Gov't Code § 12651(a)(1) ...................................................................... 5

Insurance Code § 533 ......................................................................... *passim*

**Other Authorities**

1 Allan D. Windt, Insurance Claims and Disputes § 6.2, 6-47 (5th ed.
    2007) ....................................................................................................... 11

Federal Rules of Civil Procedure § 56(a) ................................................... 2

Plaintiff Office Depot, Inc. ("Office Depot") files this Opposition to Defendant AIG Specialty Insurance Company's ("AIG") Motion for Partial Summary Judgment.

## I. INTRODUCTION.

Recognizing the profound challenge it faces to avoid the duty to defend based on the policy language, AIG continues to cling to Insurance Code Section 533, despite citing *no* authority supporting its application to a False Claims Act case, or any similar context.  In short, Section 533 does not bar an insurer's duty to defend where either (1) the potential for recovery based on less than willful conduct exists, or (2) the insured had a "reasonable expectation" of a defense based on the policy terms.  As to the first prong, now that the Court can consider the evidence – including, pleadings, discovery and the *Sherwin* settlement agreement – there can be no question that *Sherwin* sought to impose liability for recklessness, and at least potentially sought recovery for vicarious liability and even negligence.  Thus, Section 533 does not apply.  But even if Section 533 did apply, Office Depot easily satisfies the second prong because it had an objectively reasonable expectation of coverage.  While AIG argues this prong presents a "narrow path" to coverage, this is just not the case . Both of the reported decisions on which AIG relies resulted in summary judgment rulings in favor of the insured.  The same should be true here.

AIG's strained coverage arguments further reflect its desperation.  For example, AIG attempts to re-write the broad coverage grant in the AIG Policies by moving the word "solely" and arguing that, in order to be covered, the "wrongful conduct must arise solely from the use of material."  This is a blatantly incorrect reading of the coverage grant, and it violates well-established rules of policy construction.  In addition, AIG devotes nearly half its brief to citing exclusions, on which it bears an even heavier burden of proof.  Here again, AIG's arguments are badly flawed.  For example, AIG fails to even quote or discuss a clear exception to the breach of contract exclusion, which obviously disqualifies its application.  As an

1  example of a new, outrageous argument, AIG claims the *Sherwin* Real Parties were

2  the equivalent of administrative agencies like the FTC or FCC.

3       It is black letter law that an insurer can only avoid its duty to defend if the

4  complaint and surrounding allegations "can by no conceivable theory raise a single

5  issue which could bring it within the policy coverage."  *Gray v. Zurich Ins. Co.*, 65

6  Cal. 2d 263, 275 n.15 (1966).  At the end of the day, AIG cannot come close to

7  sustaining this heavy burden.  Its motion should be denied, and it should be ordered

8  to do what it should have done four years ago – defend Office Depot in *Sherwin*.

9  ## II.  FACTUAL BACKGROUND.

10      Office Depot has filed a Motion for Partial Summary Judgment on the same

11  issue addressed by AIG's motion:  whether AIG breached its duty to defend Office

12  Depot against *Sherwin*.  In support of its motion, Office Depot submitted a

13  "Statement of Uncontroverted Material Facts."  To avoid unnecessary repetition in

14  this opposition, Office Depot directs the Court's attention to the facts and evidence

15  submitted in support of its cross-motion.  *See Fair Housing Council of Riverside*

16  *County, Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001) ("[W]hen

17  simultaneous cross-motions for summary judgment on the same claim are before the

18  court, the court must consider the appropriate evidentiary material identified and

19  submitted in support of both motions, and in opposition to both motions, before

20  ruling on each of them.").  Any additional facts relevant to Office Depot's

21  opposition are referenced below, and set forth in its "Statement of Genuine Issues in

22  Opposition to AIG's Motion for Summary Judgment."

23  ## III.  ARGUMENT.

24  ### A.    AIG Cannot Satisfy Its Heavy Burdens To Prevail On This Motion.

25      Summary judgment is only appropriate if "there is no genuine issue as to any

26  material fact and the movant is entitled to judgment as a matter of law."  FRCP

27  56(a).  As the moving party, AIG bears the burden of demonstrating the absence of a

28  fact or facts necessary for one or more essential elements of each claim upon which

it seeks judgment.  *See K.M. Strategic Management, LLC v. American Casualty Company of Reading PA*, 156 F. Supp. 3d 1154 (C.D. Cal. 2015).  "When deciding a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion."  *Id.* (internal quotations omitted).

AIG seeks summary judgment as to its duty to defend – a duty that is broadly construed under California law.  *See, e.g., Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993).  Specifically, "an insurer owes a broad duty to defend its insured against any suit which *potentially* seeks damages within the coverage of the policy."  *Hardin v. Greenwich Ins. Co.*, 2012 WL 3217704, *4 (C.D. Cal. Aug. 3, 2012) (internal quotations omitted).  The relative burdens on the parties in this context were articulated by the California Supreme Court:  "To prevail, the insured ... need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it cannot."  *Montrose*, 6 Cal. 4th at 300 (Emphasis in original).  A defense is excused only when "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage."  *Montrose*, 6 Cal. 4th at 295.  "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor."  *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

Moreover, where, as here, the insurer attempts to eliminate its duty to defend based on the application of an exclusion, its burden is especially heavy.  "[A]n insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds."  *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1038-39 (2002).  Indeed, *any* provision that purports to limit coverage otherwise available under the policy is subject to the "closest possible scrutiny."  *Ticketmaster, LLC v. Illinois Union Ins. Co.*, 524 Fed. Appx. 329, *330 (9th Cir. 2013).

Ignoring well-established California law on the duty to defend, AIG's Motion

incorrectly suggests that if Section 533 bars indemnity, "it is presumed that ASIC does not have any duty to defend."  (AIG's Memorandum of Points and Authorities In Support of Its Motion for Partial Summary Judgment ("Mot.") at 7-8) *citing to Mez Indus. Inc. v. Pacific Nat. Ins. Co.*, 76 Cal. App. 4th 856, 878 (1996) and *Aetna Cas. & Surety Co. v. Superior Court*, 19 Cal. App. 4th 320, 331-32 (1993).  In *Mez*, 76 Cal. App. 4th at 878*,* the court did not find any presumption where Section 533 bars indemnification, and clearly explained that "where a denial of indemnification is based on the application of section 533, ***it does not necessarily follow that no duty to defend exists***."  Similarly in *Aetna,* 19 Cal. App. 4th at 333, the court recognized that "no public policy forbids the *defense* of claims alleging intentional acts" and no presumption was identified.  AIG's purported "presumption" is pulled out of thin air.

**B.    The Court's Earlier Ruling In the Case Did Not Foreclose A Duty to Defend Office Depot in *Sherwin*.**

AIG argues that the Court's July 22, 2016 Order held there can be no *potential for coverage* of the CFCA claims alleged in *Sherwin*.  But the Court never held "there is no potential for indemnity coverage under Section 533."  (Mot. at 17).  Instead, the Court ruled on the narrow issue that AIG "did not have a duty to indemnify Office Depot against the Whistleblower Suit."  (Doc. 48 at 9).  The Court did not address the *potential for coverage* because AIG did not move to dismiss Count I of Office Depot's complaint, for breach of AIG's Duty to Defend.

It is black letter law that a contract requiring the insurer to *defend* its insured against *accusations* of willful conduct does not offend Section 533.  *Gray*, 65 Cal. 2d at 277-78.  Here, Section 533 does not apply to the duty to defend because (1) *Sherwin* sought to impose liability under the CFCA for less than "willful" conduct (i.e., recklessness), as well as for vicarious liability and possibly even negligence; and (2) Office Depot had a "reasonable expectation" that AIG would provide a defense in light of the nature of risks covered by the Policies.  A decision in Office

- 4 -

Depot's favor on either one of these issues means that Section 533 has no application to AIG's motion.

### 1.   *Sherwin* Sought To Impose Liability For Less Than Willful Conduct.

Office Depot was sued under the CFCA, which allows liability for recklessness – not solely "willful" conduct.  The CFCA imposes liability where the defendant "[k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval."  Cal. Gov't Code § 12651(a)(1).  The CFCA defines "knowing" and "knowingly" to encompass a "reckless disregard" of the truth of the information, and "specific intent to defraud is not required."  *Id.* at § 12650(b)(3) (emphasis added).  Thus, liability attaches for recklessness in the absence of any specific intent to defraud, or to induce reliance.  Other than this Court's July 22, 2016 ruling, there is no case in California applying Section 533 to bar indemnity coverage for a statute permitting liability for recklessness.  To the contrary, courts hold that Section 533 *does not apply* to analogous statutes permitting recovery for recklessness, even where the intent to induce reliance would logically be involved, such as in the purchase and sale of securities.  *See, e.g., Raychem Corp. v. Federal Ins. Co.*, 853 F. Supp. 1170, 1179-80 (N.D. Cal. 1994) (Section 533 did not bar coverage for SEC Rule 10b-5 violations because "recklessness" is sufficient scienter for a 10b-5 violation).

The pleadings, discovery, and settlement agreement in *Sherwin* that are now before this Court on the parties' motions – but were not considered at the motion to dismiss stage – demonstrate that the *Sherwin* plaintiffs were clearly attempting to impose liability on Office Depot for recklessness.  (Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff Office Depot's Motion for Partial Summary Judgment on AIG's Duty to Defend Under Counts I and IV ("UMF") #13, 45-47).  During *Sherwin*, Real Parties argued that Office Depot's violations were "'knowing' *or at least that ODI acted with 'reckless disregard' the*

*relevant scienter under the* [CFCA]."  (UMF #46) (emphasis added).  *See also* (UMF #45, "[T]his requires a showing that ODI knew, was deliberately indifferent to, or *recklessly disregarded* 'the truth or falsity of the [alleged] information.'"); (UMF #47, "Intervenors have alleged numerous facts showing that ODI submitted false claims knowingly, i.e., *with at least reckless disregard* for the claims' truth or falsity.") (emphasis added).  These assertions are not surprising, because the CFCA only requires a "false claim" to be submitted with the "'reckless disregard' of the truth or falsity of the information" therein.  Cal. Gov't Code § 12650(b)(3).  Just as the court in *Raychem* concluded with respect to Rule 10b-5, Section 533 does not apply.

Further, the *Sherwin* Relator and Intervenors were attempting to hold Office Depot vicariously liable, and such liability would never be barred by Section 533. *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 513 (1998) ("Where a principal is held vicariously liable for an agent's [willful conduct], section 533 poses no obstacle to indemnifying the principal.").  The Relator's sole claim for relief alleged that Office Depot, "its agents, employees and co-conspirators" violated the CFCA.  (UMF #14); *see also* (UMF #15) (similar allegations by Intervenors).  In fact, the *Sherwin* settlement agreement expressly released Office Depot from "vicarious liability" and claims for "negligence" and "negligent misrepresentation," among others.  (UMF #16).

Moreover, the Intervenors brought claims for breach of contract and common law fraud.  (UMF #11).  These claims either do (breach of contract) or could (common law fraud) fall outside the willfulness standard of Section 533.  In fact, the common law fraud claim specifically alleges "wrongful" and "reckless" conduct. (Declaration of Heather W. Habes in Support of Plaintiff Office Depot Inc.'s Motion for Partial Summary Judgment on AIG's Duty to Defend under Counts I and IV ("Habes Decl."), ¶6, Ex. E at ¶¶124-125).  Finally, as evidenced by numerous of the allegations in *Sherwin* and the settlement agreement itself – which released

negligence claims – *Sherwin* could have been amended, likewise triggering AIG's duty to defend.  *See, e.g., CNA Casualty*, 176 Cal.App.3d at 607; *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (applying California law).

The cases on which AIG relies to argue that the CFCA can only impose liability for intentional conduct (i.e., an intent to induce reliance) do not involve CFCA claims, and thus have no bearing on the issue.  Instead, these cases relate to statutory schemes in which liability is *necessarily* premised on intentional conduct.  *See Mez*, 76 Cal. App. 4th at 878 (inducement of patent infringement); *Aetna*, 19 Cal. App. 4th 320 (1993) (same).  The *Mez* court held that alleged inducement of patent infringement "could not be committed except as a knowing, intentional and purposeful act that is clearly wrongful and necessarily harmful" and the defendant "would have to intend the act, that is, to intend that the induced party infringe the patent."  *Mez*, 76 Cal. App. 4th at 876-77.  *Aetna* also involved inducement of patent infringement, and the court held that such a claim required specific intent.  *Aetna*, 19 Cal. App. 4th at 330 ("It must be shown the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement.") (internal quotations omitted).  Thus, it should be no surprise that the *Mez* and *Aetna* claims were barred by Section 533.  But the *Sherwin* claims are far different.

## 2. Even Assuming Section 533 Applies, Office Depot had a "Reasonable Expectation" of Coverage.

Even if the Court concludes that *Sherwin* could not have recovered for anything other than willful conduct, AIG's Section 533 arguments still fail because Office Depot had a "reasonable expectation" of a defense, for the reasons described in Office Depot's Motion for Partial Summary Judgment in the Statement of Facts and Section III.B.2 and 3 (Doc. 69-14 at 25-29), and below.

As to AIG's legal arguments, it mistakenly asserts that Office Depot has a "narrow path" to establishing a reasonable expectation of coverage, under only two

alternatives: (1) the policy covers the specific intentional tort at issue (*Downey*, 66 Cal. App. 4th at 513), or (2) the insurer expressly promised to defend claims that cannot be indemnified (*Marie Y. v. General Star Indem. Co.*, 110 Cal. App. 4th 928, 959 (2003)).  <u>Remarkably, the two cases AIG cites in support were both decided in the insured's favor on summary judgment, each holding a "reasonable expectation" of defense to be present.</u>

First, *Downey* says the opposite of what AIG contends.  While *Downey* held that an express promise to cover a claim for malicious prosecution was "clearly sufficient" to create an objectively reasonable expectation, it by no means limited an insured's reasonable expectations to such a situation.  In fact, <u>granting summary judgment in favor of the insured</u>, *Downey* held that an insured's reasonable expectations are to be measured "in ***light of the nature and kinds of risks*** covered by the policy."  66 Cal. App. 4th at 509 (emphasis added).  Moreover, AIG's "specific intentional tort argument" is contrary to longstanding California Supreme Court authority.  Under *Gray*, the court reasoned that where an insurance policy includes a "broadly stated promise to defend [that] is not conspicuously or clearly conditioned solely on a nonintentional [conduct] … the insured could reasonably expect protection."  *Gray,* 65 Cal. 2d at 272.  In *Gray*, the insurer issued a policy in which it agreed to pay "all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage."  *Id.* at 267.  Like the Policies here, the policy in *Gray* contained a duty to defend provision stating that the insurer "shall defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement, even if the allegations of the suit are groundless, false, or fraudulent."  *Id.*  The *Gray* court held that the insurer had an obligation to defend claims for assault and battery claims in light of the broad defense language of the policy, which, "without further clarification, would lead the insured reasonably to expect the insurer to defend him against suits seeking damages for bodily injury … whether

1    intentional or inadvertent." *Id.* at 272.[1]

2          Second, AIG admits that an insurer has a duty to defend where it "expressly

3    promised to defend against claims which cannot be indemnified." (Mot. at 17).  In

4    support, AIG cites *Marie Y.*, <u>also decided on summary judgment in favor of the</u>

5    <u>insured</u>.  *Marie Y.* involved an insurance policy that provided coverage for claims

6    arising out of a "dental incident."  110 Cal. App. 4th at 935.  "Dental incident" was

7    defined in a manner similar to the AIG Policies as "any act, error, omission or

8    mistake in the rendering of or failure to render services in the profession of dentistry

9    …."  *Id.* at 951.  A patient sued the dental practice alleging that an assistant

10   observed the dentist sexually touching the patient during dental treatment, did

11   nothing to stop him, and did not immediately report the incident.  *Id.* at 957.  While

12   the court held Section 533 barred indemnity coverage, it also held the insurer had a

13   duty to defend in light of the risks covered by the policy because "the failure of a

14   dental assistant to report sexual misconduct by a dentist [was] a 'dental incident.'"

15   *Id.* at 959-60.  The court reasoned that the insured could "objectively and reasonably

16   expect a defense" for claims of intentional wrongful conduct.  *Id.* at 960.  Moreover,

17   such coverage was not precluded by any exclusion, including the policy's exclusion

18   for "willful violation of statute, ordinance or regulation imposing criminal

19   penalties."  *Id.* at 935, 960.  The same is true here.

20         The other cases on which AIG relies are far afield from this one.  In *B&E*

21   *Convalescent Ctr. v. State Comp. Ins. Fund*, 8 Cal. App. 4th 78 (1992), because the

23   [1]  Following *Gray*, there have been numerous California cases holding that the
24   insured reasonably expected a defense even though the policy did not cover the
     precise claim alleged.  *Marie Y.*, 110 Cal. App. 4th at 959 (duty to defend claims for
25   failure to report or stop sexual misconduct under policy that covered claims arising
     from "dental incidents"); *Ohio Cas. Ins. Co. v. Hubbard*, 162 Cal. App. 3d 939, 947
26   (1984) (duty to defend claims for punitive damages under policy that covered bodily
     injury and property damage); *Republic Indemnity Co. v. Superior Court*, 224 Cal.
27   App. 3d 492, 500 (1990) (defense of an action premised on willful conduct was
28   required because the policy did not contain an express exclusion to that effect).

1    wrongful termination and discrimination claims were necessarily based on

2    intentional and willful misconduct, and because <u>the defense was optional</u>, the court

3    held that *B&E* did not have a reasonable expectation of a defense.  *Id.*  Similarly, in

4    *Mez*, the court concluded that federal law proscribing inducement of patent

5    infringement required "specific intent" to encourage another's infringement, and not

6    just knowledge of acts alleged to constitute infringement.  *Mez*, 76 Cal. App. 4th at

7    866 (emphasis added).  As the Court recognized in its November 2, 2016 Order, the

8    *Mez* court relied on other federal cases holding that there was no coverage for patent

9    infringement, or inducement of patent infringement, under the same language.

10   Here, AIG does not cite to *any* cases holding that CFCA claims are precluded by

11   any insurance policy, much less a policy with broad coverage for "wrongful acts."

12         **C.    The Coverage Grant in the AIG Policies Triggers A Defense, Under**

13                **Either Both the "Potential for Coverage" and "Reasonable**

14                **Expectation" Doctrines.**

15         In addition to the broad rules regarding the duty to defend, this Court must

16   examine the AIG Policies under well-established rules of insurance policy

17   construction resolving all questions or ambiguities in favor of the insured.  *E.M.M.I.*

18   *Inc. v. Zurich American Ins. Co*., 32 Cal. 4th 465, 470 (2004).  One such

19   fundamental rule is that the policy provisions granting coverage are to be construed

20   broadly "to afford the greatest possible protection," where and limitations to

21   coverage, by contrast, are "interpreted narrowly against the insurer."  *MacKinnon v.*

22   *Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003).  As the California Supreme Court has

23   "declared time and again," any limitation on coverage "must be so stated as clearly

24   to apprise the insured of its effect."  *Id.* (*quoting State Farm Mut. Auto. Ins. Co. v.*

25   *Jacober*, 10 Cal. 3d 193, 201-02 (1973)).  Limitations must be "*conspicuous, plain*

26   *and clear*" to be enforceable.  *Id.* (emphasis in original).  Moreover, if the

27   policyholder puts forward a reasonable interpretation of a policy limitation

28   supporting the claim for coverage, that interpretation prevails even if the insurer's

interpretation might also be reasonable:

> [E]ven if [the insurer's] interpretation is considered reasonable, it would still not prevail, for in order to do so it would have to establish that its interpretation is the *only* reasonable one.

*Id.* at 655.  *See also* 1 Allan D. Windt, Insurance Claims and Disputes § 6.2, 6-47 (5th ed. 2007) (Even if insurer's interpretation were "more reasonable than the insured's interpretation," that would not provide basis for adopting insurer's interpretation; "otherwise, one would be resolving the ambiguity in favor of the insurer, in contravention of the foregoing rules").[2]

Turning to AIG's arguments concerning what the AIG Policies were intended to cover, the statement in its Introduction that the covered wrongdoing "must arise *solely* from the use of material" (Mot. at 8:16-17, original emphasis) is blatantly incorrect.  By its plain terms, the coverage grant in the AIG Policies requires that an "act, error, [or] omission" must have caused either a "covered peril" or a "loss because a third party … acts upon or makes a decision or decisions based on the content of the material…"  (Habes Decl., ¶2, Ex. A at Multimedia Module 5(g); Habes Decl., ¶3, Ex. B at Multimedia Module 5(g)).  Nowhere in the language must the "publication, [etc.] of material" *cause* anything.  Instead, the language "solely in the publication … of material" requires that a wrongful act (causing the covered peril or decision) must occur *in the context of* a "publication, broadcast, [use, etc.] of material."  It is an act, omission or misstatement that causes the covered peril or decision; not the publication of the material.

Similarly, in the argument section of its Motion, rather than quoting the plain

---

[2]  A policy provision will be considered ambiguous when it is capable of two or more reasonable interpretations.  *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 763 (2001).  If the policy's language is ambiguous, its words are to be construed in the insured's favor, consistent with the insured's reasonable expectations.  *Id.* at 765; *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 879 (2001); *AIU v. Superior Court*, 51 Cal. 3d 807, 822 (1990).

language in the Policies, AIG argues that "[t]he insuring agreement of the Policies covers damages resulting from a claim made against Office Depot for its 'wrongful acts,' *which must result* 'solely' from the 'broadcast, creation, distribution, exhibition, performance, preparation, printing, production, publication, release, display research or serialization of material' by Office Depot."  (Mot. at 12:17-21) . Again, this is a complete re-write of the coverage grant, because it suggests the "publication of material" must be the *sole cause* of the alleged wrongful acts.  The word "solely" does not apply to what *caused* the alleged wrongful acts; it modifies the context in which a covered "wrongful act" must occur.[3]

If AIG's interpretation were adopted, a complaint alleging wrongful acts both inside and outside the context of "the publication of material" would relieve AIG from coverage entirely, an absurd result, and directly contrary to the black letter law requiring coverage grants to be interpreted broadly, in favor of coverage.  *E.M.M.I., Inc.*, 32 Cal. 4th at 470.  While it is true that AIG may be relieved from covering claims of wrongful conduct that occur altogether outside the context of "publication of materials," AIG is not relieved from insuring those allegations describing acts, omissions or misstatements which occurred inside them, simply because other acts occurring outside them are alleged.  And critically for purposes of AIG's motion (and Office Depot's motion), it is any *potential* for coverage that triggers the duty to defend.  *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002) ("California courts have repeatedly found that *remote facts buried within causes of action that may potentially give rise to coverage are*

---

[3]  The term "solely" in the AIG Policies must be read in context with the words surrounding it.  Under the doctrine of *noscitur a sociis*, "the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used."  *Parman v. American Nat. Fire Ins. Co.*, 2002 WL 32689, at *5 (Cal. Ct. App., Jan. 11, 2002) (reading "earth movement" to refer to events similar in nature to those listed in insurance policy).  *See also Integra Telecom, Inc. v. Twin City Fire Insurance Co.*, 2010 WL 1753210, *4 (D. Or. 2010) ("the meaning of an unclear word or phrase should be determined by the words immediately surrounding it.").

1    sufficient to invoke the defense duty.") (emphasis added).

2        Here, the *Sherwin* allegations fall squarely *within* the coverage grant – even

3    the narrow coverage grant that AIG urges the Court to adopt.  Office Depot refers

4    the Court to the detailed discussion in Sections II and III.B of its Motion for Partial

5    Summary Judgment.  For example, in Count I of the *Sherwin* complaint, the Relator

6    alleges that Office Depot "used false records and statements, which also omitted

7    material facts, in order to induce Real Parties to approve and pay false and

8    fraudulent claims."  (UMF #17).  <u>As Office Depot has stated repeatedly, this tracks</u>

9    <u>precisely with what the Multimedia Module covers.</u>

10        Moreover, in its Opposition to AIG's recent Motion for Judgment on the

11   Pleadings (Doc. 43 at 10-15) and its Motion for Partial Summary Judgment (Doc.

12   69-14 at 13-16), Office Depot described in detail the five factual theories under

13   which the *Sherwin* complaint sought to recover from Office Depot, each of which

14   contains their sets of factual allegations that trigger coverage.  These include the

15   "Most Favored Public Entity" Allegations; the "Switch To Option 2" Allegations;

16   the "Non-Disclosure Of Costs" Allegations; the "Changes In List Price"

17   Allegations; and the "Discontinued Product" Allegations.  (*Id.*).  Remarkably, the

18   discussion in AIG's motion omits entirely the "Switch to Option 2" Allegations,

19   which presents a clear example of coverage.  For example, *Sherwin* alleges therein:

20        [Office Depot] pushed to convert many customers in the summer of

21        2007 [importantly, during the AIG Policies], which coincided with the

22        annual release of the company's catalogs.  Office Depot knew that its

23        customers expect prices to change with the release of the annual

24        catalogs.  It cynically timed the transition of many customers to coincide

25        with the catalog release so that the customers would attribute price

26        increases to the new catalog, and not Option 2.

27   (UMF #23).

28        AIG also fails to address extrinsic evidence, produced in discovery in

*Sherwin,* which provides an additional ground for triggering AIG's duty to defend. During the case, the *Sherwin* plaintiffs began to contend that Office Depot wrongfully induced Real Parties to join the U.S. Communities ("USC") program based on misleading sales materials.  Thus, Office Depot provided to AIG an e-mail dated February 26, 2009 (UMF #35) attaching an Office Depot marketing brochure titled "Smart Solutions to Take Care of Your Agency," designed for use with attempting to convince government entities to join the USC program.  These sales materials have been repeatedly described in detail to AIG, both before and during this litigation; yet AIG does not even address them in its motion. *See, e.g., El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.*, 92 Cal. App. 4th 205, 217, 111 (2001) (although complaint in the underlying suit did not use the term "advertise," insured's catalog advertising allegedly infringing product, provided to the insurer, potentially established liability and triggered insurer's duty to defend).

These allegations and those described in Office Depot's Motion for Partial Summary Judgment fall squarely within the coverage grant of the AIG Policies, which must be construed broadly in favor of coverage with all ambiguities resolved in Office Depot's favor.  Coverage is easily triggered under both the "potential for coverage" and "reasonable expectation" doctrines described above.

### D.     The Exclusions Cited by AIG Do Not Foreclose Coverage.

Realizing that its duty to defend is triggered by the coverage grant, AIG spends nearly half its brief arguing that various exclusions apply.  Notably, an exclusion is considered only if coverage attaches. *See Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 16 (1995) ("Before even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the policy terms.")

Avoiding the duty to defend based on an exclusion is rare, especially at the summary judgment stage where (1) the insurer bears the heavy burden of proving application of the exclusion as a matter of law, and (2) the exclusion must bar *the potential for coverage* of *each and every allegation* in the complaint. *See National*

Union *Fire Ins. Co. of Pittsburgh, Pennsylvania v. Amer. Int'l Specialty Lines Ins. Co.*, 233 Fed. Appx. 614, 616 (9th Cir. 2007) (where a policy exclusion applied to one claim, other claims did not fall within the exclusion). Notably, AIG cites very few cases in which an insurer won on summary judgment based on an exclusion. <u>In the Section 533 context, Office Depot is not aware of any case, and AIG has cited none, where an insured's "reasonable expectation" is defeated by an exclusion.</u>

It is well accepted that policy exclusions are "strictly construed against the insurer and liberally interpreted in favor of the insured." *Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 271 (1984); *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1985) ("[E]xclusionary clauses are interpreted narrowly, whereas clauses identifying coverage are interpreted broadly."). The insurer has the burden "to establish that a claim is specifically and clearly excluded." *MacKinnon*, 31 Cal. 4th at 648; *see also Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 880 (1978) ("'the burden of bringing itself within an exculpatory clause contained in the policy is on the insurer'").

In light of these principles, summary judgment *in favor of the insured* is often entered where the insurer is unable to sustain its heavy burden. *See Berns v. Sentry Select Ins. Co.*, No. 14-55996, 2016 WL 4011198, *1 (9th Cir. July 27, 2016) (reversing grant of summary judgment for the insurer based on an exclusion; holding that the insurer had a duty to defend because it could not meet its burden of proving the exclusion unambiguously precluded coverage); *Safeco*, 26 Cal. 4th at 763-66 (2001) (affirming grant of summary judgment for the insured on the duty to defend, reasoning that the exclusion at issue was susceptible of more than one reasonable interpretation); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Amer. Int'l Specialty Lines Ins. Co.*, 233 Fed. Appx. 614, 616 (9th Cir. 2007) (reversing grant of summary judgment for the insurer because the exclusion it relied upon only applied to one of the claims against the insured, not all claims against it.). Viewed against these standards, AIG cannot possibly win summary judgment based

on the exclusions below.

### 1.    Exclusion 7(e) For Breach of Contract

AIG's claim that the breach of contract exclusion eliminates its duty to defend *Sherwin* fails on all levels.  <u>Incredibly, AIG never even quotes or discusses the first exception to the exclusion, which obviously removes its application</u>.  The breach of contract exclusion bars coverage for claims:

> alleging, arising out of or resulting, directly or indirectly, from any liability or obligation under any contract or agreement or out of any breach of contract; <u>however, this exclusion does not apply to:</u>
>
> (1)    <u>Liability or obligation **you** or an **insured** would have in the absence of such contract or agreement</u> …

(Habes Decl., ¶2, Ex. A at Multimedia Module 7(e) ; Habes Decl., ¶3, Ex. B at Multimedia Module 7(e)) (emphasis added).

Preliminarily, AIG did not even invoke this exclusion until August 11, 2014, nearly two years after it was given notice of *Sherwin*.  (Habes Decl., ¶7, Ex. F at 7).  Thus, it has waived the exclusion; at a minimum, a triable issue exists on this point.[4]

Further, contrary to AIG's lead argument, the clause "arising out of" is *not* interpreted broadly in the context of exclusions.  When used in an exclusion as opposed to a coverage grant, that clause is interpreted narrowly.  *See H5 Services, Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 647 (9th Cir. 1997) (narrowly interpreting "arising out of" in the context of an employment-related practices exclusion as requiring that the "defamatory remark at issue must have been *a part of*

---

[4] An insurer waives its right to assert a coverage defense when it "intentionally relinquishes a right or when that [insurer's] acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."  *See, e.g., Waller*, 11 Cal. 4th at 33-34.  *See also California Dairies Inc. v. RSUI Indem. Co*., No. 1:08-CV-00790 OOW GSA, 2009 WL 2475004, at *9 (E.D. Cal. Aug. 11, 2009) (insurer's failure to include the exclusion in its denial letter was "so inconsistent with an intent to enforce Exclusion 7 so as to induce a reasonable belief that such right has been relinquished.").

*or directly and proximately result[ing] from the termination")* (emphasis added); *see also AIG Prop. Cas. Co. v. Cosby*, No. CV 15-04842-BRO, 2015 WL 9700994, *4-5 (C.D. Cal. Nov. 13, 2015) (discussing California courts' varying interpretations of "arising out of," and thus finding it ambiguous in the context of an exclusion).  The cases AIG cites for a broad interpretation of "arising out of" illustrate the different potential interpretations of such language, as discussed in *Cosby*.  And where there is more than one reasonable interpretation, the insured's interpretation governs.

Even assuming the exception to the exclusion did not exist, it is black letter law that breach of contract exclusions cannot be read so broadly as to eliminate coverage for non-breach claims asserting liability independent of a contract breach. *See Church Mutual Ins. Co. v. U.S. Liability Ins. Co.*, 347 F. Supp. 2d 880, 885 (S.D. Cal. 2004) (holding that breach of contract exclusion could not be read broadly to apply to fraud claims that purportedly arose from contract).  While the *Sherwin* case involved the USC contract, the Relator and Real Parties were attempting to impose liability under theories far from breach of contract.  In addition to the Relator's CFCA claim, it is undisputed that the Intervenors brought claims for Fraud.  (UMF #11).  Further, the Settlement Agreement released claims for negligence and negligent misrepresentation.  (UMF #16).  Here, the exception to the exclusion removes any doubt that the exclusion could apply.

The cases cited by AIG in support of the exclusion addressed far different allegations, and policy language.  For example, in *Medill v. Westport Ins. Corp.* (2006) 143 Cal. App. 4th 819, the exclusion precluded from coverage any "Damages 'arising out of' breach of any contract, whether oral, written or implied, except employment contracts with individuals." *Id.* at 829.  Moreover, the policy broadly defined "arising out of" as "based upon, arising out of, or in connection with." *Id.  See also Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.*, 106 Cal. App. 4th 293, 301 (2003) (holding no coverage for alleged negligent or improper administration of construction contract funds under

exclusion for liability" [a]rising out of or related to construction ... contracts or to any other contract for the purchase of goods or services."); *Bond Safeguard Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 628 Fed. Appx. 648, 650 (11th Cir. 2015) (applying Florida law) (unpublished) (applying contract exclusion where underlying claim "depended on the existence of contractual liability").  Unlike the AIG Policies, none of these cases address a policy that includes a clear exception to the breach of contract exclusion, and where liability could so clearly be imposed without a contract breach.

Applying the exclusion strictly, and the exception broadly, AIG cannot possibly sustain its burden of proof.

### 2.    Endorsement 6 Regarding Fraud/Intentional Conduct

AIG never cited this exclusion in the parties' pre-suit correspondence as a ground to deny its duty to defend.  (*See, e.g.*, Habes Decl., ¶7, Ex. F (no reference to the exclusion)).  It did so for the first time over three years later, in its Opposition to Office Depot's Motion for Reconsideration filed July 1, 2016.  Accordingly, AIG has waived the exclusion.  As above, this alone creates a triable issue concerning AIG's ability to invoke the exclusion.

As to the substance of Endorsement 6, the exclusion subparts state that it only applies to claims for conduct committed by (1) "directors, officers, trustees, governors, management committee members, members of the management board or partners (or the equivalent positions)…" or (2) employees with those senior officials' knowledge.  (Habes Decl., ¶2, Ex. A at End. 6; Habes Decl., ¶3, Ex. B at End. 6).  While there are some allegations that specific officers were involved in the alleged *Sherwin* conduct (*see, e.g.,* Habes Decl., ¶5, Ex. D at ¶72), the focus on Office Depot employees such as the Relator himself, a non-management employee (Habes Decl., ¶5, Ex. D at ¶11), demonstrates that AIG cannot sustain its burden that the exclusion conclusively eliminates coverage.  Throughout the complaint, *Sherwin* repeatedly referred to "Office Depot" as engaging in the conduct in

1   question, without specifying who in particular had knowledge of the allegations.

2   (*See* Habes Decl., ¶5, Ex. D at ¶¶5-10, 30-31, 34, 42-43, 45, 48-49, 53, 55, 59-61,

3   65, 68-69, 71, 76, 80-81, 83, 89-90, 92-98, 99-100).  *Sherwin* also alleged that the

4   participants in the conduct included "Defendant [Office Depot], its agents,

5   employees and co-conspirators…"  (UMF #15).

6          Moreover, while some of the *Sherwin* allegations contain inflammatory

7   allegations of fraud, numerous allegations trigger liability under the CFCA for far

8   less.  In a situation where certain claims purport to allege fraudulent conduct and

9   others do not, a fraud exclusion does *not* preclude coverage.  *See Health Net, Inc. v.*

10  *RLI Ins. Co.,* 206 Cal. App. 4th 232, 261-63 (Cal. Ct. App. 2012) (reversing

11  summary judgment for the insurer because the exclusion did not completely

12  preclude coverage for a suit involving health benefit plans, even though certain of

13  the underlying claims were based on the use of outdated data that was "dishonest;"

14  many other claims, such as claims based on the systematic flaws in the insured's

15  databases, did not fall within the exclusion).  Here, the complaint repeatedly uses the

16  term "knowing" in accusing Office Depot of CFCA violations, including in the

17  ultimate claim for liability under the CFCA.  (Habes Decl., ¶5, Ex. D at ¶¶8, 42, 43,

18  45, 55, 103-104).  These allegations created the possibility that Office Depot would

19  be liable for reckless or negligent acts, misstatements, errors or omissions not

20  implicated by the exclusion.  The exclusion would also not bar coverage for the

21  Relators' accusations based on Office Depot's sales and pricing practices, internal

22  systems and controls.  (*See, e.g.,* Habes Decl., ¶5, Ex. D at ¶95 ("Office Depot from

23  the beginning lacked a system for keeping the list prices in its catalogs firm for six-

24  month increments."); ¶100 ("Office Depot replaced many of the discontinued items

25  on the core list with equivalent products from its private labels …")).

26          Further, many allegations were made on information and belief. (*See id.* at

27  ¶78 ("Relator has information and on that basis alleges that Office Depot … even

28  switched some public entities to Option 2 without notifying them of the change…");

- 19 -

¶87 ("Relator has information and on that basis alleges that Office Depot charged Real Parties the GP floor price for far more items than was actually warranted.")). Far from alleging fraudulent or dishonest behavior, one example of an accusation on information and belief relates to normal product rotation at Office Depot:

> Relator has information and on that basis alleges that Office Depot charged Real Parties 10% off the wholesale catalog price for core list products that were properly priced at 45% of the manufacture's list price.  The company accomplished this fraud by discontinuing products on the core list.

(*Id.* at ¶99).  Surely, the exclusion cannot apply where Office Depot has discontinued a product, yet the Relator attempts to call it "fraud."

Indeed, the cases AIG cites did not include underlying allegations that were separate from those of dishonesty or fraud, as is the case here.  *Rizzo v. Ins. Co. of State of Pennsylvania*, 969 F. Supp. 2d 1180, 1198 (C.D. Cal. 2013) (finding that the underlying lawsuit contained no claims or allegations that were separate and independent from the acts of dishonesty); *Nat'l Bank of California v. Progressive Cas. Ins. Co.*, 938 F. Supp. 2d 919 (C.D. Cal. 2013) (arbitrator in the underlying dispute made a finding that the agreement at issue was not enforceable because of fraud in the execution or inception of the agreement).  At the very least, there is ambiguity as to whether Endorsement 6 was intended to apply to bar claims such as *Sherwin,* and an insured's reasonable expectation of a defense cannot be defeated by an unclear or ambiguous exclusion.  *See Gray*, 65 Cal. 2d at 273-74 (holding insured had a reasonable expectation of defense where application of exclusion to policy's broad duty to defend was "anything but clear").  "If the coverage provisions in any policy of insurance are unclear or the exclusions are ambiguous, so that a reasonable purchaser of the policy would not realize that the risk is excluded and thus would reasonably expect the insurer to furnish a defense, a defense is required."  *B&E*, 8 Cal. App. 4th at 99-100.

Among other reasons, Endorsement 6 is ambiguous because it fails to specify the nature of the intent that is required to trigger its application.  There was no finding as to Office Depot's conduct or intent, if any, in the *Sherwin* Lawsuit because it was settled under an agreement with plaintiffs in which Office Depot disclaimed any liability for the suit.  (Request for Judicial Notice in Support of Plaintiff Office Depot's Motion for Partial Summary Judgment on AIG's Duty to Defend Under Counts I and IV ("RJN"), Ex. D, Ex. 1 at ¶39)).  Moreover, the exclusion does not refer to or otherwise limit AIG's broad duty to defend under the Policies, creating further ambiguity in its application.  AIG certainly cannot "prove" that Endorsement #6 applies to bar coverage for all potential liability.  *See Montrose*, 6 Cal. 4th at 300.

### 3.    Exclusion 7(g), the Prior Acts Exclusion

AIG next alleges that a "Prior Acts" exclusion bars coverage for claims:

alleging, arising out of or resulting, directly or indirectly, from any **wrongful act** or series of continuous or repeated **wrongful acts** where the first such **wrongful act** first occurs prior to the inception of or subsequent to the termination of the **policy period**;

(Habes Decl., ¶2, Ex. A at Multimedia Module 7(g); Habes Decl., ¶3, Ex. B at Multimedia Module 7(g)).

In support of its position, AIG cites only a single, general allegation of the *Sherwin* complaint alleging that the alleged conduct took place "from at least 2001 until January 1, 2011."  (Mot. at 18).  AIG thus makes an unsupported assertion that *all* conduct occurring during the AIG policy periods *must have* been a continuation of prior wrongful conduct.  Such a broad and expansive interpretation directly contradicts California law holding that exclusions be interpreted narrowly and in favor of coverage.  *MacKinnon*, 31 Cal. 4th at 648.

In the context of a "Prior Acts" exclusion, cases hold that the insurer must defend its insured where a prior acts exclusion *might* apply.  *CNA Cas. of California*

1   *v. Seaboard Surety Co.*, 176 Cal. App. 3d 598, 613 (Cal. Ct. App. 1986) (agreeing

2   with the trial court that an insurer cannot "decline a defense where the application of

3   an exclusion was only a possibility"); *Federal Ins. Co. v. National Union Fire Ins.*

4   *Co. of Pittsburgh*, 1991 WL 36330, *1-2 (9th Cir. March 15, 1991) (unpub) (holding

5   that the insurer had a duty to defend despite the prior acts exclusion because it was

6   impossible to know when the first act of trademark infringement occurred at the

7   time the complaint was filed).  In the cases cited by AIG, it was clear that the

8   underlying conduct necessarily occurred prior to the policy period, and thus there

9   was no doubt regarding the applicability of the "Prior Acts" exclusion.  *Maxtech*

10   *Holding, Inc. v. Federal Ins. Co.*, 202 F.3d 278, *2-3 (9th Cir. 1999) (all evidence of

11   use of the trademark, advertising expenditures and correspondence related to the

12   infringement occurred prior to the policy period); *Amer. Guar. & Liab. Ins. Co. v.*

13   *Abram Law Group LLC*, 555 Fed. Appx. 919, 921-22 (11th Cir. 2014) (conduct

14   occurred on two specific dates, the first of which was prior to the policy and formed

15   the basis of the claims relating to the later conduct).

16        Here, in contrast, for most of the five factual theories raised in the *Sherwin*

17   complaint, the specific conduct alleged occurred within the AIG Policy period of

18   March 1, 2007 through March 1, 2009; for others, the language is so vague that no

19   conclusion could be drawn as to when the conduct allegedly occurred.  Thus, for the

20   "Most Favored Public Entity" allegations, the *Sherwin* complaint discusses a

21   representative nine-month period of July 2008 through March 2009.  (Habes Decl.,

22   ¶5, Ex. D at ¶65).  For the "Switch to Option 2" allegations, Sherwin addresses

23   conduct occurring in the Summer of 2007.  (Habes Decl., ¶5, Ex. D at ¶76; *id.* at ¶80

24   ("conduct abandoned after March 2009")).  For the "Change in List Prices"

25   allegations, the Sherwin complaint references changes "at the end of 2007."  (Habes

26   Decl., ¶5, Ex. D at ¶97).

27        Because many of these factual theories allege conduct falling specifically

28   within the AIG Policies, and not before, AIG obviously cannot show that exclusion

- 22 -

Plaintiff Office Depot's Opposition to Defendant AIG's Motion for Partial Summary Judgment

7(g) forecloses all coverage.

### 4.      Exclusion 4(i), the Public Agency Exclusion

AIG next alleges that the "Public Agency" exclusion bars coverage, but it obviously does not apply.  AIG failed to invoke this exclusion until its Motion for Partial Summary Judgment, not citing it in response to Office Depot's tender and demands for coverage, nor even as an Affirmative Defense in its Answer.  (Doc. 52).  Thus, it has been waived.

In any event, AIG's attempt to characterize the Real Parties in *Sherwin* as government "agencies" fails miserably.  From the context of the exclusion language, it is clear that the term "agency" was meant to refer to an administrative agency with the authority to bring administrative proceedings or claims.  The exclusion bars claims "brought by or on behalf of … the Federal Trade Commission ('FTC'), the Department of Health and Human Services ('HHS'), the Office of Civil Rights ('OCR'), the Federal Communications Commission ('FCC') or any other federal, state or local government agency, or foreign government agency…."  *See, e.g., Integra Telecom, Inc. v. Twin City Fire Insurance Co.*, 2010 WL 1753210, *4 (D. Or. 2010) ("the meaning of an unclear word or phrase should be determined by the words immediately surrounding it."); *Parman v. American Nat. Fire Ins. Co.*, 2002 WL 32689, at *5 (Cal. Ct. App., Jan. 11, 2002) (applying the doctrine of *noscitur a sociis* to interpret the term "earth movement" in an insurance policy).  The exclusion obviously was not intended to refer to Cities and Counties of a State that purchased office supplies from Office Depot.

Notably, in its briefing, AIG refers to the Real Parties not as agencies, but as "government entities" (Mot. at 19:18) and "public entities" (Mot. at 13:10, 19).  Its own argument for application of the exclusion admits that the real parties were "over sixty school districts and regional agencies," thus confirming that the real parties included non-agencies.  Similarly, the *Sherwin* complaint refers to Real Parties as "government entities," "public entities" and "political subdivisions."

(Habes Decl., ¶5, Ex. D at ¶¶12, 42).  Had AIG really intended to exclude from coverage claims brought by the full range of government purchasers of Office Depot supplies, it would have been simple to do so.  Applying the standards above, AIG cannot possibly prevail on this exclusion.  *MacKinnon*, 31 Cal. 4th at 648 (insurer has the burden "to establish that a claim is specifically and clearly excluded.").

### 5.      Exclusion 4(p)

AIG next cites exclusion 4(p) of the BASE section of the Policies, which it calls the "price guarantee/price warranty" exclusion, even though there is no reference to the terms "price guaranty" or "price warranty" in it.  The exclusion is so poorly drafted and difficult to comprehend that AIG does not even attempt to quote it.  Because of the badly flawed sentence configuration involving multiple semicolons, it is difficult if not impossible to discern what the clauses even mean.  For this reason alone, AIG's argument that this exclusion somehow applies should be rejected.  *See Church*, 347 F. Supp. 2d at 885.

At best, the exclusion bars coverage for the "inaccurate, inadequate, or incomplete description of the price of goods . . ." or "any insured's fees, cost or profit guarantees, cost representations, contract price, or estimates of probable costs or cost estimates being exceeded."  (Habes Decl., ¶2, Ex. A at Base Section 4(p); Habes Decl., ¶3, Ex. B at Base Section 4(p)).  However, *Sherwin* does not allege that the prices of any products were described inaccurately, inadequately, or incompletely.  Moreover, with respect to the second subpart – to the extent it is even possible to comprehend – there are no allegations that Office Depot quoted the Real Parties a specific cost for any of the products that was thereafter exceeded, and AIG has pointed to none.

AIG argues that "the undisputed purpose of a most favored nations clause is to provide a guarantee against a future event."  (Mot. at 20).  Remarkably, AIG is attempting to take a single, undefined word in the exclusion – the word "guarantee" – and broaden it to subsume a far-reaching complaint, alleging numerous factual

theories of recovery.  Even if the undefined, isolated word "guarantee" could be stretched to consume the "most favored nations" allegations in *Sherwin* – which it obviously cannot – the exclusion still could not eliminate AIG's duty to defend the other factual theories alleged in *Sherwin*.  *See E.M.M.I.,* 32 Cal. 4th at 470 (limitations to coverage are "interpreted narrowly against the insurer."); *MacKinnon*, 31 Cal. 4th at 648.

### 6.    Exclusion 7(a)

AIG's attempt to invoke Exclusion 7(a) of the Multimedia Module, which excludes claims arising out of, among other things, "accounting practices or the determination of contingent compensation…" (Habes Decl., ¶2, Ex. A at Multimedia Module 7(a); Habes Decl., ¶3, Ex. B at Multimedia Module 7(a)), also fails.  As above, AIG failed to invoke this exclusion until its Motion for Partial Summary Judgment, not even citing it as an Affirmative Defense in its Answer. (Doc. 52).  Thus, it has been waived.  In any event, the term "accounting practices" is likewise undefined, and could never be read to eliminate coverage for anything other than perhaps a very narrow category of allegations against Office Depot, which AIG does not even attempt to specify.

## IV.  CONCLUSION

For the foregoing reasons, Office Depot respectfully requests that this Court deny AIG's Motion for Partial Summary Judgment, and enter partial summary judgment in favor of Office Depot.

DATED:   December 12, 2016   Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


By:    /s/Brent W. Brougher
       Brent W. Brougher

Attorney for Plaintiff
OFFICE DEPOT, INC.

1

## **CERTIFICATE OF SERVICE**

2

3   I hereby certify that on December 12, 2016, I electronically filed the

foregoing Plaintiff Office Depot's Opposition to Defendant AIG Specialty Insurance

4   Company's Motion for Partial Summary Judgment with the Clerk of the Court using

5   the court's CM/ECF system.  The electronic case filing system will be sending a

6   "Notice of Electronic Filing" to all attorneys of record who have consented to accept

7   service by electronic means.

8

9                                    /s/Brent W. Brougher
                                     Brent W. Brougher

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28